# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHERINE R. SLOCUM, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 10-CV-650-TCK-PJC |
| | ) |
| CORPORATE EXPRESS US INC.; | ) |
| CORPORATE EXPRESS OFFICE | ) |
| PRODUCTS INC.; COX | ) |
| COMMUNICATIONS CENTRAL II, INC.; | ) |
| COX OKLAHOMA TELCOM L.L.C.; | ) |
| COXCOM, INC.; JOURNAL | ) |
| BROADCAST GROUP, INC.; JOURNAL | ) |
| BROADCAST GROUP of KANSAS, INC.; | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court are Defendants Corporate Express US Inc. and Corporate Express Office Products Inc.'s (collectively "Corporate Express") Motion to Dismiss (Doc. 10); Defendants Cox Communications Central II Inc., Cox Oklahoma Telecom, LLC, and Coxcom, Inc.'s (collectively "Cox") Motion to Dismiss (Doc. 22); Defendants Journal Broadcast Group, Inc. and Journal Broadcast Group of Kansas, Inc.'s (collectively "Journal Broadcast") Motion to Dismiss (Doc. 23); and Cox's Joinder in Journal Broadcast's Motion to Dismiss (Doc. 24).

## I.  Factual Background

Plaintiff has filed at least five previous cases alleging that various defendants are spying on her using surveillance equipment, harassing her, slandering her, and discriminating against her, in violation of the U.S. Constitution and numerous other state and federal laws. All such lawsuits have been dismissed. (*See Slocum v. Corporate Express, Inc.*, Case No. 08-CV-364-JHP, Doc. 10) ("Plaintiff's petition contains primarily conclusory allegations wholly lacking supporting factual

averments that might give the Court some basis for concluding those allegations are 'plausible,' and Plaintiff's few claims that do contain supporting factual averments are implausible on their face."); *Slocum v. City of Claremore*, Case No. 08-CV-436-GKF-PJC, Doc. 10 (deeming motions to dismiss confessed based on Plaintiff's failure to respond); *Slocum v. City of Claremore*, Case No. 08-CV-756-GKF-PJC, Doc. 22 (granting motion to dismiss for failure to state a claim, addressing each of plaintiff's seventeen propositions); *Slocum v. Corporate Express*, Case No. 09-CV-03-GKF-FHM, Doc. 44 (granting motion to dismiss for failure to state a claim for same reasons articulated in Case No. 08-CV-364); and *Slocum v. State of Oklahoma*, Case No. 10-CV-302-GKF-TLW (deeming motions to dismiss based on Plaintiff's failure to respond to motions to dismiss).

In this case, Plaintiff has again sued Corporate Express, her former employer, and named two new Defendants, Cox and Journal Broadcast. Plaintiff's allegations in this case appear to be based on the following essential facts:

> As of this date November 13, 2009 the Defendant's agents from a risk management surveillance company contracted by ("Defendants Corporate Express") are still currently broadcasting their satellite surveillance equipment, from the Plaintiff's home, pending further litigation from Ms. Slocum. . . .The Defendants have used the surveillance cameras with audio capabilities to broadcast her living to a network of various radio broadcasters and as well as various television broadcasters. The Defendants have used their electronic surveillance capabilities to humiliate the Plaintiff by videotaping her in the shower, and videotaping her using the bathroom facilities, and broadcasting her activity to various radio broadcasters, and network television broadcasters.

(Pet. ¶ 14.) Plaintiff alleges that this surveillance was initiated by Corporate Express in 2006, that Corporate Express or its agents have re-planted the surveillance devices following her moves to new residences, and that the surveillance has been continuous for at least four years and eight months. Plaintiff further contends that this surveillance of her has been broadcast on television and radio, including national radio shows such as Rush Limbaugh and Sean Hannity. In addition to

surveillance within her home, Plaintiff contends that Corporate Express also conducted surveillance of her in public places:

> The Corporate Express agents practiced a "now you see me now you don't" technique, in which, for example they would go to a restaurant that I was going to, and they would listen to my conversations with friends, and family, and talk to each other about things that only meant something to me, but my friends, and family would not have a clue what was going on. When the Plaintiff tried to explain it to her family the Corporate Express agents would change the subject, and act like they did not know me. The Plaintiff's family thought she was being paranoid, and losing my mind. They frequently used a technique where they would put a cell phone to their ear, and then talk to Plaintiff, but it would look like to her friends and family that they were talking to someone else. Another example of this was when the Plaintiff went on to an elevator with her husband on the way to see her first attorney, two women got on the elevator in front of us, and said to each other, "My attorney said, If we don't win we have to pay them for their attorney fees and court costs." The other woman answered her with, "Well you couldn't afford that." Then the Plaintiff got off the elevator with her husband, and I said, "Do you see what Corporate Express is doing to me?" Her husband said, "They were talking to each other not to you." The Plaintiff saw the attorney, and her husband told her attorney that she was having a problem with paranoia. Later her Husband called, Doctor Theresa Farrow, and said he was worried about Mrs. Slocum, and she was acting paranoid. She prescribed paranoia medicine for the Plaintiff.
> One last incident the Plaintiff wants the Court to know was that the Plaintiff was later having lunch with her two girl friends from the Emmaus Walk, when agents of Corporate Express got in line in front of the Plaintiff at Panara Bread. The agents of Corporate Express made very exaggerated demonstrative actions with a check book, and made remarks about having money in the check book, and then the man behind the Plaintiff said, "That ought to slow her ass down." The Plaintiff got her lunch, and then went to sit down with her friends, and the Plaintiff was mad, and started doing what they were doing to the Plaintiff, and then the Plaintiff started talking about a friend at church that was in the security business. ("Slocum") tried to tell her friends that she was being harassed, and then they went out to her friend's car, and prayed together. The Plaintiff went home that night, and tried to tell her husband what happened then her husband called her friend Twilla, and tried to verify that she was being harassed. Twilla cried, and said ("Slocum") got upset about something, but she did not see them harass the Plaintiff. ("Slocum's") husband and she got in an argument about it, and he later called Dr. Theresa Farrow, and she ordered more paranoia medicine for then Mrs. Slocum.

(Pet. ¶¶ 73-74.)

3

Plaintiff asserts 25 "propositions," which allege violations of the U.S. Constitution, various state criminal statutes, federal discrimination laws, and common law torts such as slander and invasion of privacy. All Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## II. Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement

of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

### III. Motions to Dismiss

All Defendants argue that Plaintiff's allegations fail to state any claim for relief. The Court agrees. First, with respect to Cox and Journal Broadcast, Plaintiff has not provided fair notice of what conduct forms the basis of Plaintiff's claims against them. The Petition only uses these Defendants' names in jurisdictional allegations relating to the location of their places of business. (*See* Pet. ¶¶ 4-7.) The Petition does not set forth any conduct that is specifically or even implicitly tied to Cox or Journal Broadcast. Defendants and the Court are left to speculate as to how these Defendants violated the laws identified by Plaintiff. Put simply, these Defendants do not have sufficient information to determine what they did that forms the basis of the twenty-five "propositions" asserted against them in this lawsuit.

Second, with respect to Corporate Express, the Court concludes that Plaintiff's allegations are so outlandish, implausible, and/or incomprehensible that the Court has no "reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177. Plaintiff's allegations that her former employer planted surveillance equipment in her bathroom, re-planted such equipment in numerous residences to which she moved, hired agents to follow Plaintiff, and caused the contents of such surveillance to be broadcast over

5

television and radio networks are so outlandish that Defendants should not be forced to conduct discovery or otherwise proceed with this lawsuit. Plaintiff's claims are precisely the type intended to be weeded out by the *Twombly* standard because they have no reasonable prospect of success. Moreover, Plaintiff has asserted identical or similar allegations against different defendants such as the City of Claremore. (*See Slocum v. City of Claremore*, Case No., 08-CV-756-GKF-PJC, Doc. 22 (alleging that the City of Claremore conducted surveillance of her in her house and published 'nude video' to various network broadcasters").) While Plaintiff's allegations in this case are outlandish standing alone, they become considerably more outlandish when viewed in conjunction with similar allegations made against other entities. The *Twombly* standard allows the Court to consider whether "this plaintiff" has a reasonable chance of mustering factual support for her claims, and the Court concludes that this particular Plaintiff does not have any reasonable chance of doing so.

The Court further concludes that all but four of Plaintiff's twenty-five "propositions" are subject to dismissal based on the doctrine of res judicata[1] because identical claims were asserted against Corporate Express and dismissed for failure to state a claim in Case Nos. 08-CV-364-JHP (*see* Doc. 10) and 09-CV-03-GKF-FHM (*see* Doc. 44). *See King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997) ("Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits."); *Berrios v. New York City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("[D]ismissal for failure to state a claim is a final judgment on the

---

[1] Propositions 5, 6, 19, and 20 are new allegations against Corporate Express, all of which relate to publication of certain private information about Plaintiff on talk radio shows such as Rush Limbaugh and Sean Hannity. These are subject to dismissal for the reasons stated above.

merits and thus has res judicata effects[.]") (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 399 & n. 3 (1981)).[2]

## IV. Warning Regarding Sanctions

Plaintiff has repeatedly filed cases involving identical or similar allegations regarding various entities conducting surveillance of her. Plaintiff has forced numerous defendants – including Corporate Express, the City of Claremore, the State of Oklahoma, Cox, and Journal Broadcast – to answer, expend legal fees, and defend claims that have been repeatedly denied by this Court. The Court has considered sua sponte sanctioning Plaintiff by forcing her to pay certain of Defendants' attorney fees. *See Wheeler v. C.I.R.* 521 F.3d 1289, 1291-92 (10th Cir. 2008) (explaining that pro se status does not insulate a litigant from being sanctioned and that a court has inherent power to impose sanctions to deter frivolous filings). However, the Court declines to do so at this time. Plaintiff is expressly cautioned that further litigation involving alleged surveillance of Plaintiff could result in a significant sanction against her, including but not limited to a judgment of attorney's fees.

## V. Filing Restrictions

"Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances." *Ford v. Pryor*, 552 F.3d 1174, 1180 (10th Cir. 2008). "An injunction limiting further filings may be imposed where the litigant's lengthy and abusive history is set forth; the court provides guidelines as to what the litigant

---

[2] The Court's consideration of the pleadings in Case Nos. 08-CV-364 and 09-CV-03, which are matters of public record, does not require conversion of Corporate Express's motion to dismiss to one for summary judgment. *See Hausler v. Felton*, 739 F. Supp. 2d 1327, 1329 (N.D. Okla. 2010) (reference to pleadings and orders entered in prior case did not require conversion of motion to dismiss into one for summary judgment because such documents were a matter of public record).

7

may do to obtain its permission to file an action; and the litigant receives notice and an opportunity to oppose the court's order before it is implemented." *Id.* (internal quotations omitted).

Based on Plaintiff's lengthy and abusive litigation history regarding these particular claims, explained above, the Court finds that filing restrictions are appropriate. Plaintiff is hereby provided notice that the Court intends to prevent Plaintiff from filing further lawsuits flowing from alleged surveillance of her, either through devices in her home or agents following her. *See id.* (explaining that filing restrictions are generally limited to the subject matter of the previous lawsuits). Plaintiff may oppose this restriction by filing a brief limited to five pages in length no later than May 23, 2011.

**VI.    Conclusion**

Corporate Express's Motion to Dismiss (Doc. 10) is GRANTED; Cox's Motion to Dismiss (Doc. 22) is GRANTED; Journal Broadcast Group's Motion to Dismiss (Doc. 23) is GRANTED; and Cox's Joinder in Journal Broadcast's Motion to Dismiss (Doc. 24) is GRANTED. All claims are hereby dismissed with prejudice, and a judgment of dismissal will be entered. Plaintiff is provided notice of the Court's intent to impose filing restrictions upon her. Plaintiff may oppose this restriction by filing a brief limited to five pages in length no later than May 23, 2011.

SO ORDERED this 9th day of May, 2011.

_____
TERENCE C. KERN
United States District Judge